**TIALAVEA, MULITAUAOPELE S., and SAVEA, Plaintiffs**

**v.**

**AGA and SILIGA, Defendants**

## No. 2-1957

## High Court of American Samoa
### Civil Jurisdiction, Trial Division
[Land: "Afulei" and "Mafa" between Auto and Amaua]

## February 28, 1957

Heard at Fagatogo on January 22nd and 23rd, 1957 before MORROW, *Chief Judge,* and APE and LETULI-GASENOA, *Associate Judges.*

Mulitauaopele S. and Tufele (assistant), counsel for Tialavea, Savea and Mulitauaopele S.

Siafulei and Aga, counsel for Aga and Siliga.

OPINION OF THE COURT

MORROW, *Chief Judge.*

On February 11, 1955 Aga and Siliga of Fagaitua applied to the Registrar of Titles to have certain land, designated as Afulei and Mafa on the survey accompanying the application, registered as the communal family land of the Aga and Siliga families. The land lies between the villages of Auto and Amaua and borders on the sea. On March 1, 1955 Tialavea of Amaua filed an objection to the proposed registration claiming that the land was the communal family land of the Tialavea Family. On March 18, 1955 Mulitauaopele S. and Savea also filed an objection claiming that

273

the land was the communal family land of the Mulitauao-pele, Savea, Tialavea and Niuamoa Families.

Prior to the hearing the Court viewed the land in the presence of the parties.

At the hearing it appeared that the three objectors are the senior matais in one family and that Niuamoa is a lesser matai in the same family, and that when the senior matais filed their respective objections, they were acting in behalf of the one family known as the Mulitauaopele, Tialavea and Savea Family, and we shall treat the objections as having been made in behalf of that family.

There is a stream (marked Afulei on the survey) which runs across the surveyed tract generally in a southeasterly direction from the north side to its southern side and terminates in the sea.

There is no dispute as to the ownership of the land in the surveyed tract lying west of this stream. It was admitted by the objectors that this part west of the stream is the communal family land of the Aga and Siliga Family and we so find. And we further find from the evidence that this part of the surveyed tract lying west of the stream Afulei is also called Afulei.

There was conflicting testimony as to whether the land Afulei did not also include a small portion of the land in the southwestern corner of the remaining part of the surveyed tract. A Samoan fale which has been occupied by the Aga and Siliga people for more than 40 years stands on this small portion. The fale is surrounded by nearby plantations of the Aga and Siliga people. We believe from the weight of the evidence that this small portion, on which are the house and plantations, is a part of the land Mafa and not a part of the land Afulei lying to the west of it, and we so find. We are confident that the stream Afulei separates the land Afulei lying west of the stream from the land Mafa which adjoins and lies east of it.

274

■ To establish their ownership of the land east of the stream the objectors rely in part upon a decision of the High Court in the case of *Leiato (Teo) et al., Plaintiffs v. Howden, W. et al., Defendants, Pele et al., Interpleaders,* No. 10-1901 (H.C. of Am. S.). That case involved the ownership of the land Amaua. The Court rendered a decree to the effect that such land was the property of Pele, Tialavea, Niuamoa and Savea. Pele, Tialavea and Savea were the predecessors in title (matai) of the three objectors in the present case. The Niuamoa in the 1901 case was a lesser matai in the Mulitauaopele-Tialavea-Savea Family. The decision in the 1901 case—and we have examined the proceedings in that case carefully—does not indicate whether all or any part of Mafa was included in the land Amaua. Whether such was the fact or not, the decree in the 1901 case is not binding upon Aga and Siliga in the present case since neither Aga nor Siliga nor anyone with whom they are in privity were parties to that case. "The rights of a person who is not a party to a suit, nor in privity with a party, are not affected by the judgment rendered therein; as between him and a party to the action, their rights are to be determined as if the judgment had never been rendered. Such a third person is not bound or concluded by the judgment, or in other words the judgment is not res judicata as to him, it not being permissible to adjudicate the rights of a person in an action to which he is not a party, and a judgment or decree being deemed not to be an adjudication of the rights of a person who is not a party, or to be an adjudication of any question as between a party and a person not a party." 34 Corpus Juris 1043.

■ Also to establish their title to the part of the land Mafa in the surveyed tract the objectors relied upon their family tradition as to the ownership of such land, the tradition going back about 300 years. Most of the tradition was handed down orally—all of it orally for about 200

years for Samoans did not use writing to any extent until a good many years after the missionaries came to Samoa about 1830. And while some of the tradition may have come down through writing during the last 100 years, yet very little of the whole tradition has. It is common knowledge that tradition handed down orally over a long period of time is frequently not very trustworthy. If A tells B a story today and B repeats it to C 20 years from today and C to D 20 years later and so on every 20 years for 200 years, what K will tell L in the year 2157 may bear little resemblance to what A told B 200 years before. This elementary fact is the reason that tradition in one family about an event occurring years before is frequently entirely different from the tradition in another family about the same event. And the longer the tradition is handed down, the more it is subject to error. After all, tradition is only hearsay. But in American Samoa, due to the lack of government land records and the fact that there was no government in Tutuila prior to 1900 it is necessary to use tradition to establish land titles in most cases even though it is hearsay and is frequently subject to considerable error. Springing from necessity, this practice has been approved by the courts. Chief Justice Wyche in the case of *Levale et al. v. Toaga,* No. 26A-1945 (H.C. of Am. S.) said: "The question of title to real estate in American Samoa is always a difficult one to solve for the reason that in most cases there is no recorded title to, nor description of property. Title to real estate is generally proved by family tradition."

The objectors also relied in part upon use and occupation of part of Mafa by their family members, particularly the northern part thereof included in the survey. The Court is convinced from what it saw when it viewed the land in the presence of the parties and from the testimony that the northern part of the surveyed tract lying east of

the stream Afulei has been used by the Tialavea people for many years. In a part of this area the Court saw long coconuts. Judging from their height, they must have been planted more than 25 years ago. They were planted by the Tialavea people. The same people have banana plantations in this area, and have had for a good many years.

To establish their title to the part of Mafa east of the stream and included in the survey, Aga and Siliga relied in part upon use and occupation and upon a decision of the High Court in the case of *Aga and Siliga v. Pele, Savea and Tialavea*, No. 30-1907 (H.C. of Am. S.), hereinafter referred to as the 1910 case. The ownership of Mafa was involved in that case as well as other land.

The parties in that case were the predecessors in title (matai) to the parties in this case.

In the course of its opinion, dated February 3, 1910, the Court said: "Let a decree therefore issue vesting the title of the lands Vailaau, Avaio, Afulei and that part of Mafa not included in the decree of the High Court referred to supra (the decree referred to was that rendered in the 1901 case) in the plaintiffs, Aga and Siliga. The plaintiffs are advised to have the land Mafa resurveyed and register a proper plan in conformity with the decree." No decree was ever actually entered in that case vesting the title in Aga and Siliga. It is undisputed in the present case that no survey was made by the plaintiffs in the 1910 case and that makes it quite clear why no decree was actually entered.

The present Aga and Siliga, the prior Aga and Siliga being long since dead, did have a survey made by John Hall on Dec. 9, 1950—40 years later and it is that survey that was filed with the application to register in this case. The Court in the 1910 case found that Aga and Siliga were the owners of the western part of the land Mafa, but as heretofore stated no decree was ever actually entered vesting the title in them. The "western part of the land Mafa" is an

indefinite description. It might mean a tenth part or a hundredth part.

In the 1910 case the Court in its opinion said: "In the trial held in 1910 Pele and Tialavea (both deceased), the predecessors of the present defendants, testified positively that Aga, one of the plaintiffs, was the owner of the land adjoining the land Amaua on the western boundary." The transcript of the testimony in the 1910 case shows that the then Pele on the witness stand in response to questions by the court as to the boundaries of the land Amaua testified as follows:

Court: "This is on the western boundary?"
Answer: "Mafa is the western boundary."
Court: "Who are the people who adjoin the land on the west?"
Answer: "Aga."
Court: "To what town does he belong?"
Answer: "Fagaitua."
Court: "Does Aga go down to the sea coast?"
Answer: Yes."
Court: "What marks the boundary with Aga on the sea coast?"
Answer: "The sea."

The evidence in the present case showed clearly that the Aga and Siliga people have occupied and used a fale in the southwestern part of Mafa for more than 40 years; that they have had plantations about the fale for many years; and that in addition they have also had possession (a possession disputed by the objectors at various times) of Mafa for a considerable distance up the stream from the fale for many years.

The weight of the evidence is to the effect that the northern part of that portion of Mafa (Afulei lies west of the stream Afulei and Mafa east of it) included in the survey is the communal land of the Pele-Tialavea-Savea Family and that the southern part of such portion, subject to the easement of the public in the highway thereon next to the sea, is the communal land of the Aga-Siliga Family,

278

and we so find. Furthermore we find that the dividing line between such northern and southern parts is a line having a bearing of S 52°03′ W and a length of 318.75 feet, which line begins at the north end of the boundary marked N 46° 04′ W length 103.05 feet on the survey, and extends therefrom to the middle of the stream Afulei.

The Court has caused the aforementioned dividing line to be marked by a broken line in red on the survey. The fact is that the Tialavea people long ago planted coconuts on the northern part of Mafa included in the survey and have harvested and used the produce therefrom ever since. This was admitted to the Court by the Aga and Siliga people when it viewed the land prior to the hearing. These coconuts, in view of their height, are necessarily more than 25 years old. The Tialavea people have also had banana plantations on the northern part for a good many years. The Tialavea people have claimed ownership of this northern part in behalf of the Pele-Tialavea-Savea Family ever since the coconuts were planted by them, and for a long time prior thereto. We are convinced from the evidence that the Aga and Siliga people have never occupied and used this northern part, or had actual possession of it as have the Tialavea people .

It is clear to us from the evidence, if any other Samoan family, the Aga and Siliga Family included, had any claim of ownership valid or invalid, to the northern part prior to the time of the occupation, use and possession of the same by the Tialavea people from the time the coconuts were planted more than 25 years ago, that such claim has been rendered null and void by operation of the law of adverse possession which vests title in the adverse possessor after 20 years of such possession, and that title to such northern part became vested in the Tialavea people prior to the institution of this case. Even if the Court in the 1910 case had decreed that the northern part was the property

of the Aga and Siliga Family (which it did not for no decree was entered in that case), nevertheless ownership of such northern part would have vested in the Pele-Tialavea people subsequent to the 1910 case. Adverse possession for the statutory period (it is 20 years in American Samoa, A. S. Code, Sec. 907) vests title in the adverse possessor. *Maxwell Land Grant Co. v. Dawson*, 151 U.S. 586, 607; *Puailoa v. Leapaga*, No. 64-1948 (H.C. of Am. S.).

■ Before the government was established by the U.S. Navy in Tutuila in 1900, Samoans acquired title to their lands through first occupancy coupled with a claim of ownership. *Soliai v. Lagafua*, No. 5-1949 (H.C. of Am. S.); *Faatiliga v. Fano*, No. 80-1948 (H.C. of A. S.) See 2 Blackstone 8; Maine's Ancient Law (3rd Am. Ed.) 238.

In accordance with our findings we decree as follows:

### DECREE

### Part I

It is ORDERED, ADJUDGED and DECREED that a parcel of land located in Sua County between Auto and Amaua villages and more particularly described as follows shall be registered as the communal family land of the Aga and Siliga Family of Fagaitua:

For Point of Reference commence from the northeast corner of the Auto Bridge bearing N 19° 56′ E a distance of 249.90 feet; thence N 33° 36′ E a distance of 277.40 feet; thence N 38° 30′ W a distance of 25.10 feet to a concrete Monument for the True Point of Beginning.

From the True Point of Beginning run thence S 38° 30′ E a distance of 25.10 feet to a point on the centerline of the Main East-West Highway 11 feet more or less from the Gatae tree; run thence following Bearings and distances on the centerline of said Highway; N 40° 12′ E a distance of 76.50 feet; thence N 41° 59′ E a distance of 99.80 feet; thence N 48° 31′ E a distance of 229.65 feet; thence N 25° 16′ E a distance of 298.48 feet; thence N 61° 55′ E a distance of 118.21 feet; thence N 70° 42′ E a distance of 301.60 feet; thence

N 45° 95′ E a distance of 52.78 feet; thence N 4° 27′ E a distance of 152.22 feet to an iron pin set on the edge of road; run thence S 39° 53′ W a distance of 62.50 feet to a point set on the hill; run thence following the Top of ridge S 40° 32′ W a distance of 161.36 feet; thence N 89° 51′ W a distance of 141.95 feet; thence N 66° 40′ W a distance of 202.25 feet; thence N 46° 04′ W a distance of 103.05 feet; thence S 52° 03′ W a distance of 318.75 feet to a point in the middle of the stream Afulei (this stream being the boundary between the land Afulei on the west and the land Mafa on the east); thence by the thread of such stream to a point in the middle thereof (such two last-mentioned points being the ends of a line 367.7 feet long with a bearing of N 30° 12′ W and indicated by a broken blue line on the survey at the direction of the Court); thence N. 81° 30′ W following the said stream a distance of 224.27 feet; thence N 84° 56′ W leaving the said Stream a distance of 153.73 feet; thence S 30° 44′ W a distance of 86.12 feet to an iron pin; thence S 18° 47′ E a distance of 209.24 feet to a point on the hill; run thence S 14° 17′ E following the side of hill a distance of 121.06 feet; thence S 53° 28′ E a distance of 72.43 feet; thence S 85° 46′ E a distance of 65.30 feet to an iron pin; run thence S 61° 39′ E a distance of 28.87 feet; thence S 42° 42′ E a distance of 97.62 feet; thence S 38° 14′ E a distance of 123.38 feet; thence S 37° 24′ E a distance of 142.85 feet to an iron pin; run thence S 3° 27′ E a distance of 241.50 feet to an iron pin; thence S 38° 30′ E a distance of 70.55 feet to the concrete Monument the True Point of Beginning. (It is recited herein that the foregoing description in Part I of this decree includes the land Afulei lying west of the stream Afulei as shown on the survey together with that part of Mafa included in the survey and lying south of the broken red line as marked on the survey at the direction of the Court which line has a bearing of S 52° 03′ W and a length of 318.75 feet. Such broken red line begins at the north end of the boundary marked N 46° 04′ W length 103.05 feet on the survey and ends in the middle of the stream Afulei.)

## Part II

And it is further ORDERED, ADJUDGED and DE-CREED that the following described land shall be registered as the communal family land of the Mulitauaopele, Tialavea and Savea Family:

Beginning at the north end of the boundary on the survey having a bearing of N 46° 04′ W and a length of 103.05 feet (such boundary is referred to in Part I of this decree), thence N 17° 14′ W a distance of 114.21 feet; thence N 33° 24′ W a distance of 230.92 feet; thence S 68° 44′ W a distance of 18.28 feet; thence S 52° 03′ W a distance of 232.91 feet; thence S 68° 56′ W a distance of 80.92 feet to a point in the middle of the stream Afulei; thence by the thread of such stream to a point in the middle thereof (such two points being at a distance of 367.7 feet from each other and being at the ends of a line having a bearing of S 30° 12′ E); thence N 52° 03′ E a distance of 318.75 feet to the point of beginning at the northern end of the aforementioned boundary with a bearing of N 46° 04′ W and a length of 103.05 feet. (It is recited herein that the foregoing description in Part II of this decree covers that part of Mafa included in the survey which lies East of the stream Afulei and north of the aforementioned broken red line as marked on the survey at the direction of the Court. Also it should be understood that the land lying between the aforementioned line with a bearing of N 30° 12′ W length 367.7 feet (marked by a broken blue line on the survey at the direction of the Court) and the stream Afulei as shown on the survey is a part of the land Afulei decreed by the Court in Part I of this decree to be the communal family land of the Aga and Siliga Family).

All bearings set out in this decree refer to magnetic north. Date of survey when the bearings were taken was Dec. 9, 1950. Afulei and the part of Mafa included in the survey have a combined area of 14.825 acres, more or less.

Costs in the sum of $50.00 are hereby assessed against the parties, $25.00 to be paid by Aga and Siliga and $25.00 by Mulitauaopele S., Tialavea and Savea. All costs are to be paid within 30 days.